**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

DEMARKUS R. HORNE, et al.,    :
                                 :
    Plaintiffs,           :
                                   :
    v.                    :     CIVIL ACTION NO.
                                 :     1:17-CV-954-RWS
HARBOUR PORTFOLIO VI, LP,    :
et al.,                         :
                                 :
    Defendants.        :

## <u>ORDER</u>

This case comes before the Court on Harbour Defendants' Motion to

Dismiss [34], Defendant National Asset Advisors, LLC's Partial Motion to

Dismiss [63], and Defendant National Asset Advisors, Inc.'s Motion to

Withdraw Answer to Cross Claim of Defendant JCT Capital [74].  After

reviewing the record, the Court enters the following Order.

### Background[1]

This case arises out of contract for deed ("CFD") home purchase

transactions extended by Harbour Portfolio VI, LP and Harbour Portfolio VII,

---

[1]  As the case is before the Court on a motion to dismiss, the Court accepts as
true the facts alleged in the complaint.  <u>Cooper v. Pate</u>, 378 U.S. 546, 546 (1964).

LP (the "Harbour Defendants") to the Plaintiffs.  Plaintiffs allege that these

CFDs contained abusive credit terms.  They also allege that the Harbour

Defendants intentionally targeted Plaintiffs because of their race and that the

Harbour Defendants actions had a disparate impact on Plaintiffs because they

are African-American.

The Harbour Defendants purchased all, or nearly all, of its properties

from Fannie Mae's portfolio of "real estate owned" properties, which are

homes that went through foreclosure but were not purchased by third parties.

(Second Am. Compl. ("SAC"), Dkt. [8-1] ¶ 45.)  These homes were often in

poor or uninhabitable condition, but no repairs were made prior to selling them

via the CFDs.  (Id. ¶¶ 48–49.)  The Harbour Defendants would mark up the sale

price of the home to four or five times their purchase price.  (Id. ¶ 49.)  Under

the terms of the CFDs, interest rates were 9.9% or 10% over a 30-year period.

(Id. ¶ 50.)  The CFDs also put the burden of home repairs, maintenance,

property taxes, and homeowner's insurance on the buyer.  (Id. ¶ 51.)  Each

CFD contained a forfeiture clause giving the Harbour Defendants the right,

upon default, to elect to cancel the contract, keep all amounts paid, and evict

the buyer.  (Id.)

2

Plaintiffs allege that the Harbour Defendants engaged in reverse redlining, the practice of issuing subprime loans to minority communities.  (Id. ¶ 34.)  They allege that the Harbour Defendants purchased homes located in communities that are majority African-American and designed a marketing scheme to draw primarily African-American buyers.  (Id. ¶ 61.)  The Harbour Defendants advertised by placing signs in front of the properties and through word of mouth.  (Id. ¶¶ 62–64.)  The Plaintiffs allege that the people most likely to see the signs or hear about the Harbour Defendants' properties were those already in the neighborhoods, i.e. African-Americans.  (Id. ¶ 63.) Plaintiffs rely in large part on statistics to show both that the Harbour Defendants intentionally targeted African-American buyers and that their actions had a disparate impact on African-Americans.  (Id. ¶¶ 71–82.)

Plaintiffs now bring multiple claims against the Harbour Defendants and others involved.  Relevant to the currently pending motions, some or all of the Plaintiffs bring claims against the Harbour Defendants under the Fair Housing Act, the Equal Credit Opportunity Act, the Georgia Fair Housing Act, the Truth in Lending Act, the Georgia Fair Business Practices Act and the Unfair and Deceptive Practices Towards the Elderly Act, and the Georgia Residential

3

Mortgage Act, and for equitable mortgage, declaratory judgment, unjust

enrichment, and malicious eviction.  Due to allegations of the mismanagement

of escrow funds, Plaintiffs bring a claim against National Asset Advisors, Inc.

("NAA") under the Real Estate Settlement Procedures Act and for equitable

mortgage, declaratory judgment, and unjust enrichment.  Plaintiffs also bring

claims against Harbour Portfolio VII, LP and NAA for breach of contract and

breach of the duty of good faith and fair dealing and for negligence based on

the escrow mismanagement.

**Analysis**

The Harbour Defendants have filed a motion to dismiss the twelve

claims brought against it.  NAA has filed a motion to dismiss Counts Seven,

Eight, Nine and Eleven and a partial motion to dismiss Counts Ten and Twelve.

Defendant NAA has also filed a Motion to Withdraw Answer to Cross Claim of

Defendant JCT Capital [74], which the Court **GRANTS** as unopposed.  The

Court will now address the pending motions to dismiss.

## I.  Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a

"short and plain statement of the claim showing that the pleader is entitled to

4

relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at

AO 72A
(Rev.8/82)

555.

## II.     The Harbour Defendants' Motion to Dismiss

### A.     Statute of Limitations

The Harbour Defendants argue that Plaintiffs' claims are time barred and should therefore be dismissed at this stage.  When "noncompliance with the statute of limitations is apparent on the face of the complaint," a claim may be dismissed at the pleading stage.  Omar ex rel. Cannon v. Lindsey, 334 F.3d 1246, 1251 (11th Cir. 2003).  The Harbour Defendants argue that many of Plaintiffs' claims, listed in Appendix A of their motion to dismiss, are time barred because the alleged wrongful conduct occurred at loan origination, and the amount of time that elapsed from the date of loan origination to the date of filing this lawsuit exceeds the allowable period under the relevant statute of limitations.  (App. A, Dkt. [34-2].)

"The continuing violation doctrine applies to the continued enforcement of a discriminatory policy, and allows a plaintiff to sue on otherwise time-barred claims as long as one act of discrimination has occurred during the statutory period."  City of Miami v. Bank of Am. Corp., 800 F.3d 1262, 1284 (11th Cir. 2015), vacated and remanded on other grounds, 137 S. Ct. 1296

AO 72A
(Rev.8/82)

(2017) (internal quotations and alterations omitted).  In Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982), the Supreme Court applied the continuing violation doctrine in the context of a Fair Housing Act ("FHA") claim.  Three plaintiffs brought suit for discrimination under the FHA.  One plaintiff, an African-American man, was turned away from the defendant's apartment complex during the limitations period.  Two other plaintiffs, a white tester and an African-American tester, attempted to obtain housing in the complex but not within the limitations period.  The Court allowed all three claims to proceed.

"Where the challenged violation is a continuing one, the staleness concern disappears."  Id. at 380.  A "wooden application" of the statute of limitations in this context "only undermines the broad remedial intent of Congress embodied in the [Fair Housing] Act."  Id.  Thus "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the limitations period, starting at] the last asserted occurrence of that practice."  City of Miami, 800 F.3d at 1285 (quoting Havens, 455 U.S. at 380–81).

Plaintiffs have, at this time, alleged an unlawful practice in which the

AO 72A
(Rev.8/82)

Harbour Defendants engaged in a pattern of discriminatory lending.  They

allege that the Harbour Defendants targeted African-Americans for predatory

contracts for deeds by purchasing homes in predominately African-American

census tracts and advertising in a way to target African-Americans.  While each

CFD may not be identical, "the essential discriminatory practice has remained

the same . . . ."  Id.  They have also alleged that this unlawful practice

continued into the relevant limitations periods when Plaintiff Jackie Brown's

loan was originated on April 15, 2015.  This is enough to invoke the continuing

violations doctrine at this stage of litigation.

> **B.**     Count One - Violation of the Fair Housing Act, 42 U.S.C. §§
>
> 3604, 3605

All Plaintiffs bring claims under the Fair Housing Act against the

Harbour Defendants under theories of both intentional and unintentional

discrimination for reverse redlining.  "Redlining is the practice of denying the

extension of credit to specific geographic areas due to the income, race, or

ethnicity of its residents."  Hargraves v. Capital City Mortg. Corp., 140 F.

Supp. 2d 7, 20 (D.D.C. 2000) (internal quotations omitted).  Reverse redlining

is "the practice of extending credit on unfair terms because of the plaintiff's

race and geographic area." <u>Steed v. EverHome Mortg. Co.</u>, 308 F. App'x 364, 369 (11th Cir. 2009) (citing <u>Hargraves</u>, 140 F. Supp. 2d at 20).

In <u>Steed</u>, the Eleventh Circuit applied the analysis of <u>Hargraves</u> in a reverse redlining case. To state a plausible reverse redlining claim, Plaintiffs must allege "that the defendants' lending practices and loan terms were unfair and predatory, *and* that the defendants either intentionally targeted on the basis of race, or that there is a disparate impact on the basis of race." <u>Steed</u>, 308 F. App'x at 368 (internal quotations and citation omitted). "[P]redatory lending practices include exorbitant interest rates, equity stripping, acquiring property through default, repeated foreclosures, and loan servicing procedures that involve excessive fees." <u>Id.</u> at 369. "[W]hether the practices alleged occurred, and whether the practices were unfair and predatory, is a jury question." <u>Id.</u>

Plaintiffs have alleged that the Harbour Defendants engaged in predatory lending practices. They allege that the interest rates charged were 9.9% or 10%, while the prevailing interest rates for mortgage loans was around 4% (SAC, Dkt. [8-1] ¶¶ 50, 58); that the contracts included forfeiture clauses giving the Harbour Defendants the option to cancel the contract and keep all amounts paid (<u>id.</u> ¶ 51); that the Harbour Defendants were able to reacquire the

property through the default of the Plaintiffs (id. ¶ 57); and that the Harbour

Defendants have filed at least 71 eviction cases in Fulton, DeKalb, and Clayton

County from 2011 to 2015 (id. ¶ 55).

Plaintiffs have alleged both that the Harbour Defendants intentionally

targeted on the basis of race and that their business model had a disparate

impact on the basis of race.  The Court will address each in turn.

The Harbour Defendants argue that Plaintiffs have failed to allege a

claim for disparate impact in light of Texas Department of Housing &

Community Affairs v. Inclusive Communities Project, Inc., 135 S. Ct. 2507

(2015).  They argue that after Inclusive Communities, a plaintiff must

> (1) show statistically imbalanced lending patterns which adversely
> impact a minority group; (2) identify a facially neutral policy
> followed by the defendant during the same period of time; (3)
> show how that policy is artificial, arbitrary, and unnecessary;[2] and
> (4) allege how that policy was a substantial cause of the adverse
> lending patterns.

_____

[2] Plaintiffs argue that Inclusive Communities did not add arbitrariness as an element at the pleading stage.  None of the cases cited by Plaintiffs, however, support this conclusion.  In National Fair Housing Alliance v. Travelers Indemnity Co., 261 F. Supp. 3d 20 (D.D.C. 2017), the court focused its discussion on the causality requirement.  As does the court in Sams v. Ga West Gate, LLC, No. CV 415-282, 2017 WL 436281 (S.D. Ga. Jan. 30, 2017).

10

Cobb Cty. v. Bank of Am. Corp., 183 F. Supp. 3d 1332, 1346 (N.D. Ga. 2016) (internal quotations omitted).  While the Harbour Defendants argue that Plaintiffs have failed to meet their burden as to all four elements, the Court disagrees.

Plaintiffs have alleged that the Harbour Defendants had a policy of only purchasing homes from Fannie Mae and only advertising via yard signs and word of mouth.  These are facially neutral policies.  They have alleged that the homes available from Fannie Mae constituted less than one-quarter of foreclosure properties available during the relevant time period.  (SAC, Dkt. [8-1] ¶ 46.)  This supports an inference, at the pleading stage, that the policy of purchasing from Fannie Mae was arbitrary because the Harbour Defendants could have purchased homes from other sources.

Plaintiffs have also pleaded facts that show a statistically imbalanced lending pattern that adversely impacts a minority group.  They have alleged that a disproportionate concentration of the transactions by the Harbour Defendants occurred in high-minority census tracts.  (Id. ¶ 76.)  As alleged in the Second Amended Complaint, "Fannie Mae sales in Fulton and DeKalb County from 2011–2015 were located in census tracts that had a mean

11

percentage of African-American residents of 71.37%."  (Id.)  However, "the mean racial makeup of the census tracts where other (non-Fannie Mae) single family home sales occurred in Fulton and DeKalb County over the same time period was 48.37% African American."  (Id.)  These facts support an inference at the pleading stage that the Harbour Defendants' customers were more likely to be members of a protected class than is true for the population of Fulton and DeKalb Counties as a whole.

Finally, the Harbour Defendants argue that Plaintiffs have not and cannot allege a robust causal connection between any alleged facially neutral policy and the alleged disproportionate racial outcome.  The racial disparity in the relevant census tracts predates any involvement by the Harbour Defendants.  Therefore, their conduct could not have caused the racial disparity.  While it is true that the Harbour Defendants' policy of purchasing from Fannie Mae did not cause the racial imbalance in these areas, this argument misses the point.  Plaintiffs do not argue that because of the policy, there are more African-Americans living in these areas.  They argue that because the Harbour Defendants decided to purchase homes in areas with a higher concentration of African-Americans, African-Americans are more likely to be home buyers in

12

this area and thus adversely impacted by the Harbour Defendants' alleged predatory lending practices.  See Nat'l Fair Hous. Alliance v. Travelers Indemn. Co., 261 F. Supp. 3d 20, 31–34 (D.D.C. 2017) (comparing post-Inclusive Communities cases in which the necessary robust causality for a disparate-impact FHA claim is shown via a statistical disparity).

Plaintiffs have alleged facts that, if true, would show that the Harbour Defendants' policy of only purchasing homes from Fannie Mae and only advertising those homes via yard signs and word of mouth caused a disproportionate impact on African-Americans.  Plaintiffs have therefore stated a prima facie FHA claim under a theory of disparate impact.

The Harbour Defendants also argue that Plaintiffs have failed to state a claim for intentional discrimination under the FHA because they fail to allege that they were treated differently than similarly situated people outside of their protected class.  In reverse redlining cases, however, courts have held that "if the plaintiff presents direct evidence that the lender intentionally targeted her for unfair loans on the basis of [membership in a protected class], the plaintiff need not also show that the lender makes loans on more favorable terms to others."  Matthews v. New Century Mortg. Corp., 185 F. Supp. 2d 874, 886–87

13

(S.D. Ohio 2002) (citing <u>Hargraves</u>, 140 F. Supp. 2d at 20); <u>see also</u> <u>Steed</u>, 308 F. App'x at 368–69 ("[<u>Hargraves</u>] also held that the plaintiff need not show that the defendant made loans on preferable terms to non-African-Americans.").

Plaintiffs have alleged that the Harbour Defendants intentionally targeted African-Americans by advertising properties via signs in front of each house for sale and via word of mouth, both of which were designed to reach the primarily African-American residents of communities where the Harbour Defendants purchased properties. This evidence, along with the evidence of the racial demographics of the relevant communities, is sufficient to state a claim for intentional targeting on the basis of race. <u>See</u> <u>Hargraves</u>, 140 F. Supp. 2d at 21–22 (finding a genuine dispute of fact as to whether the defendants targeted plaintiffs on the basis of race due to evidence that defendants solicited brokers who operated mainly in the black community, distributed flyers and advertisements in black communities, and put their offices in black communities); <u>see also</u> <u>Steed</u>, 308 F. App'x at 369 (discussing <u>Hargraves</u>).

Plaintiffs have stated a prima facie case under the FHA under theories of both intentional targeting and disparate impact. The Harbour Defendants'

14

Motion to Dismiss [34] is therefore **DENIED** as to Count One.

  C.  Count Two - Violation of the Equal Credit Opportunity Act, 15
U.S.C. § 1691 *et seq*.

  All Plaintiffs, except for Donna Brown and James Hunter, bring claims
under the Equal Credit Opportunity Act ("ECOA") against the Harbour
Defendants.  This claim is based on the same allegations as Plaintiffs' FHA
claims in Count One, and Defendants arguments in favor of dismissal are
likewise similar.  As discussed above, Plaintiffs' allegations of discriminatory
predatory lending, under theories of both intentional targeting and disparate
impact, are sufficient to allege a violation of ECOA.  See, e.g., Hargraves, 140
F. Supp. 2d at 22–23.

  Defendants first argue that in order to state a claim for intentional
discrimination under ECOA, Plaintiffs must allege that they were treated
differently than white applicants.  None of the cases cited by Defendants,
however, dealt with allegations of reverse redlining.  In such cases, a plaintiff
may instead show intentional targeting.  See M & T Mortg. Corp. v. White, 736
F. Supp. 2d 538, 575 (E.D.N.Y. 2010) ("Courts have thus softened the
requirements for establishing a *prima facie* case when reverse-redlining forms

the substance of the [FHA or ECOA] discrimination claim, and have allowed

such plaintiffs to show that they (i) were members of a protected class; (ii)

applied for and were qualified for the housing or the loan; (iii) received grossly

unfavorable terms; and (iv) were intentionally targeted or intentionally

discriminated against."); see also Brook v. Sistema Universitario Ana G.

Mendez, Inc., No. 8:17-CV-171-T-30AAS, 2017 WL 1743500, at *2 (M.D.

Fla. May 4, 2017) (recognizing a claim for reverse redlining under ECOA but

dismissing it for plaintiff's failure to allege sufficient facts).  "The elements of

a *prima facie* case are flexible and should be tailored, on a case-by-case basis,

to differing factual circumstances."  Fitzpatrick v. City of Atlanta, 2 F.3d 1112,

1123 (11th Cir. 1993) (discussing the McDonnell Douglas framework for

discrimination claims).  As discussed above with regard to Plaintiffs' FHA

claim, Plaintiffs have sufficiently alleged intentional targeting such that they

need not allege that they were treated differently than white applicants.

Defendants next argue that Plaintiffs fail to state a claim for disparate

impact under ECOA by failing to allege a facially neutral policy that caused an

unintentional racial disparity.  As discussed above, Plaintiffs have sufficiently

alleged such facts.[3]  The Harbour Defendants' Motion to Dismiss [34] is

therefore **DENIED** as to Count Two.

> D.      Count Three - Violation of the Georgia Fair Housing Act,
>
> O.C.G.A. § 8-3-200 *et seq*.

All Plaintiffs bring claims under the Georgia Fair Housing Act ("Georgia

FHA") against the Harbour Defendants.  "Claims arising under the Georgia

FHA . . . are interpreted under the same standard as the Federal FHA."

Lowman v. Platinum Prop. Mgmt. Servs., Inc., 166 F. Supp. 3d 1356, 1360

(N.D. Ga. 2016).  Since Plaintiffs have stated a claim under the FHA, they have

also stated a claim under the Georgia FHA.  The Harbour Defendants' Motion

to Dismiss [34] is therefore **DENIED** as to Count Three.

> E.      Count Four - Violation of the Truth in Lending Act, 15 U.S.C. §
>
> 1601 *et seq*.

Plaintiffs Jackie Brown and LaQuinta Hutchins bring claims under the

Truth in Lending Act ("TILA") against the Harbour Defendants.  Plaintiffs and

the Harbour Defendants agree that the appraisal (SAC, Dkt. [8-1] ¶¶ 430, 432)

---

[3] Defendants also argue, in a footnote, that disparate impact liability is
unavailable under ECOA.  They do not, however, cite any case so limiting ECOA.

AO 72A
(Rev.8/82)

and escrow (id. ¶¶ 431, 433) claims brought under the TILA are subject to a one-year limitations period and are therefore time barred.  The Harbour Defendants' motion is therefore **GRANTED** as to these two claims.

A three-year limitations period applies to the remaining ability to repay claim (id. ¶ 429) by Plaintiff Jackie Brown.  15 U.S.C. § 1640(e) (setting a three-year limitations period for claims brought under 15 U.S.C. §§ 1639, 1639b, or 1639c).  The Harbour Defendants' only argument for dismissing this remaining claim comes in a short footnote of their reply brief.  (Harbour Defs.' Reply Mem. in Supp. of Mot. to Dismiss, Dkt. [59], at 10 n.11)  As such, the Court will not consider the argument.  The Harbour Defendants' motion is therefore **DENIED** as to the ability to repay claim.

F.      Count Five - Violation of the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq*. and the Unfair and Deceptive Practices Towards the Elderly Act

All Plaintiffs bring claims under the Georgia Fair Business Practices Act ("FBPA") against the Harbour Defendants and others.  Plaintiffs Ola Johnson, Al Butts, and Veronica Pitts bring additional claims under the Unfair and Deceptive Practices Towards the Elderly Act ("UDPTEA") against the Harbour

Defendants and others.

The FBPA prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce . . . ." O.C.G.A. § 10-1-393(a).  It does not apply to "[a]ctions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States." O.C.G.A. § 10-1-396(1).  Defendants argue that real estate transactions are heavily regulated, so Plaintiffs claims fall within the FBPA's exception.  Plaintiffs, however, argue that the exemption applies only to actions or transactions *specifically authorized*.

There is a split of authority as to how broadly the FBPA's exemption should be interpreted.  As the Georgia Court of appeals has noted, "federal courts . . . have held that because mortgage transactions are regulated by state and federal law, FBPA claims that allege injury based on mortgage transactions should be dismissed, either because the entire area of mortgage transactions are regulated or because the specific transactions at issue in the case are so regulated." Stewart v. Suntrust Mortg., Inc., 770 S.E.2d 892, 898 (Ga. Ct. App. 2015) (upholding dismissal of plaintiff's FBPA claim because it failed under

19

either theory).  Some cases have held that "the FBPA does not apply to transactions that occur in regulated areas of activity, such as loan lending and servicing."  Sheppard v. Bank of Am., NA, 542 F. App'x 789, 793 (11th Cir. 2013).  Others, however, have held that "there is no blanket exemption from the FBPA for mortgage lenders; rather, the specific conduct under challenge must be regulated by another statute to trigger the exemption."  Stroman v. Bank of Am. Corp., 852 F. Supp. 2d 1366, 1381 (N.D. Ga. 2012) (citing Kitchen v. Ameriquest Mortg. Co., No. 1:04-CV-2750-BBM, 2005 WL 6931610, at *7 (N.D. Ga. Apr. 29, 2005)).

The Court finds that under either interpretation of the FBPA's exemption, the Harbour Defendants have not shown that their conduct is not subject to the FBPA.  While they cite multiple cases supporting their interpretation that the exemption applies generally to loan and lending services, all of these cases deal with mortgages.  See, e.g., Roberts v. CitiMortgage, Inc., 1:14-CV-3259-ODE-LTW, 2015 WL 11549383, at *7 (N.D. Ga. May 1, 2015); Jackman v. Hasty, No. 1:10-CV-2485-RWS, 2011 WL 854878, at *6 (N.D. Ga. Mar. 8, 2011).  This case, however, deals with contracts for deeds, which are not mortgages.  See O.C.G.A. § 44-14-60 (stating that a deed to secure debt

AO 72A
(Rev.8/82)

"shall not be held to be a mortgage"); O.C.G.A. § 7-1-1000(21) (defining

"mortgage loan" as "a loan or agreement to extend credit made to a natural

person, which loan is secured by a deed to secure debt, security deed,

mortgage, security instrument, deed of trust, or other document representing a

security interest or lien . . . ."). The two are sufficiently different that the cases

cited by the Harbour Defendants do not support a holding that no claim

regarding contracts for deed may be stated under the FBPA.

Additionally, the Harbour Defendants have not pointed to any statute or

regulation dealing with the specific claims at issue here, nor has the Court been

able to locate one. At this stage, the burden is on Defendants to show that

dismissal is proper. However, the Harbour Defendants may present further

argument on this issue in the future.

Finally, the Harbour Defendants cite to Rivergate Corp. v. McIntosh, 421

S.E.2d 737 (Ga. Ct. App. 1992), for the proposition that a FBPA claim based

on a written instrument cannot proceed when the signer can read and when

there was no fraud preventing the signer from reading the instrument. The

FBPA claim in McIntosh, however, was predicated on misrepresentations about

the contents of a written instrument. In contrast, Plaintiffs' claim here rests on

21

a theory of unfairness.  <u>McIntosh</u> is therefore not a bar to Plaintiffs' claim.

As to the claims of Plaintiffs Ola Johnson, Al Butts, and Veronica Pitts under UDPTEA, the Harbour Defendants argue that these claims must fail because they are wholly predicated on the FBPA claims.  "Under Georgia law, individuals who violate the FBPA are subject to additional civil penalties if the violation is committed against elder or disabled persons."  <u>Brogdon ex rel. Cline v. Nat'l Healthcare Corp.</u>, 103 F. Supp. 2d 1322, 1336 (N.D. Ga. 2000) (citing O.C.G.A. § 10-1-851).  As discussed above, Plaintiffs have sufficiently stated a claim under the FBPA and can therefore bring a claim for additional civil penalties under UDPTEA.

The Harbour Defendants further argue that these Plaintiffs have failed to sufficiently allege their disability as required by UDPTEA.  To state a claim under UDPTEA, a party must allege he is a disabled person or elder person. O.C.G.A. § 10-1-850 (defining "disabled person" and "elder person").  A disabled person is one "who has a physical or mental impairment which substantially limits one or more of the such person's major life activities." O.C.G.A. § 10-1-850(1).  Plaintiffs Ola Johnson and Al Butts are both alleged to receive Social Security Disability.  (SAC, Dkt. [8-1] ¶¶ 145, 225.)  To

AO 72A
(Rev.8/82)

receive disability benefits, one must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not lest than 12 months."  42 U.S.C. § 423(d)(1)(A).  Working is considered a major life activity under UDPTEA.  O.C.G.A. § 10-1-850(3).  The allegations that Plaintiffs Ola Johnson and Al Butts receive Social Security Disability is therefore sufficient to state a claim under UDPTEA.  As to Plaintiff Veronica Pitts, however, the Second Amended Complaint contains no allegations that she is a disabled person or elder person under UDPTEA.  She has therefore failed to state a claim under UDPTEA.

Thus, the Harbour Defendants' Motion to Dismiss [34] is **DENIED** as to Count Five's FBPA claim and **DENIED** as to Plaintiff Ola Johnson's and Plaintiff Al Butts's UDPTEA claim but **GRANTED** as to Plaintiff Veronica Pitts's UDPTEA claim.

G.   Count Six - Violation of the Georgia Residential Mortgage Act, O.C.G.A. §§ 51-1-6, 51-1-8

The Signatory Plaintiffs bring claims under the Georgia Residential

AO 72A
(Rev.8/82)

Mortgage Act ("GRMA") against the Harbour Defendants.  The group of

signatory plaintiffs consists of DeMarkus Horne, Jackie Brown, Ola Johnson,

Michael Johnson, Anita Jordan, Laundra Martin, Al Butts, Veronica Pitts, Lisa

Ellis-Blades, Rita Henigan, Rohan Powell, LaQuinta Hutchins, Tabitha Hunter,

and Gerry White.

Georgia law provides that "[w]hen the law requires a person to perform

an act for the benefit of another or to refrain from doing an act which may

injure another, although no cause of action is given in express terms, the

injured party may recover for the breach of such legal duty if he suffers damage

thereby."  O.C.G.A. § 51-1-6.  "Private duties may arise from statute or from

relations created by contract, express or implied.  The violation of a private

duty, accompanied by damage, shall give a right of action."  O.C.G.A. § 51-1-

8.  The GRMA, upon which this claim is based, sets forth requirements and

prohibited acts for those engaged in the mortgage business.  O.C.G.A. § 7-1-

1000 *et seq*.

The Harbour Defendants argue that the GRMA does not set forth a

private cause of action.  Courts in this district are divided on this issue.

Compare Reese v. Wachovia Bank, N.A., No. 1:08-CV-3461-GET, 2009 WL

AO 72A
(Rev.8/82)

10664907 (N.D. Ga. Feb. 23, 2009) (finding no private cause of action), and Echezona v. Wells Fargo, No. 1:12-CV-00254-ODE-JFK, 2012 WL 12872909 (N.D. Ga. Nov. 13, 2012) (same), with Scott v. Bank of Am., N.A., No. 1:09-CV-2958-HTW, 2011 WL 13209607 (N.D. Ga. Sept. 16, 2011) (finding a private cause of action). The Court finds the reasoning in Scott more persuasive and therefore finds that the GRMA does provide a private cause of action.

This conclusion is supported by cases from the Georgia Court of Appeals, which implicitly recognize a private cause of action under the GRMA. In Geary v. Wilshire Credit Corp., 673 S.E.2d 15 (Ga. Ct. App. 2009), the court affirmed dismissal of the plaintiffs claim under the GRMA for failure to present evidence of a violation of the statute, not because of a lack of a private cause of action. Similarly, in Roylston v. Bank of America, N.A., 660 S.E.2d 412 (Ga. Ct. App. 2008), the court affirmed dismissal because the plaintiff's claim was based on actions taken during foreclosure and therefore not covered by the GRMA. Neither case suggests that had the plaintiff been able to state a claim under the GRMA, he would have been barred because the GRMA does not provide for a private cause of action. The Harbour Defendants' Motion to

25

Dismiss [34] is therefore **DENIED** as to Count Six.

> H.      Count Seven - Equitable Mortgage

All the Signatory Plaintiffs, except Tabitha Hunter and Gerry White, bring claims for an equitable mortgage against the Harbour Defendants and others.  As an initial matter, Plaintiffs admit in their complaint that the Harbour Defendants no longer own the contracts for the following Plaintiffs: DeMarkus Horne (SAC, Dkt. [8-1] ¶ 120), Ola and Michael Johnson (id. ¶ 167), and Rita Henigan and Rohan Powell (id. ¶¶ 291–92).  As the Harbour Defendants are unable to offer the relief requested, Count Seven is **DISMISSED** as to these Plaintiffs.[4]

Under Georgia law, in bringing a claim for equitable relief, "[h]e who

---

[4]  Although Plaintiffs allege that the Harbour Defendants no longer own the CFD for Plaintiff Jackie Brown (SAC, Dkt. [8-1] ¶ 141), the Harbour Defendants acknowledge that they do in fact own that contract.  (Mem. of Law in Supp. of Harbour Defs.' Mot. to Dismiss, Dkt. [34-1], at 28 n.27.)  Plaintiff Jackie Brown's claim is therefore not dismissed.  In addition, although the Harbour Defendants argue that Plaintiffs have alleged that they no longer own the CFD for Plaintiff LaQuinta Hutchins, Plaintiffs have actually alleged that she was told there was a new owner but that there has been no proof of such a transfer.  (SAC, Dkt. [8-1] ¶¶ 313, 316.)  Plaintiff LaQuinta Hutchins's claim is therefore not dismissed.  Similarly, Plaintiffs allege that Plaintiff Anita Jordan received notice that her home was sold, but there are sufficient allegations in the Second Amended Complaint to infer that the property was not in fact sold.  (Id. ¶¶ 198–99.)  Plaintiff Anita Jordan's claim is therefore not dismissed.

would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action." O.C.G.A. § 23-1-10. Typically, "a plaintiff may not use equity to obtain the cancellation of a security deed or promissory note if the plaintiff has not paid the note or tendered payment of the note." Taylor, Bean & Whitaker Mortg. Corp. v. Brown, 583 S.E.2d 844, 846 (Ga. 2003).

Plaintiffs have not alleged that they meet this tender requirement. However, Plaintiffs here are not seeking cancellation of the CFDs. They instead seek "an order declaring that they are the owners of the homes in question *subject to an equitable mortgage loan* for an amount certain." (SAC, Dkt. [8-1] ¶ 463 (emphasis added)). Plaintiffs are not seeking to avoid their financial requirements under the CFDs. Dismissal for failure to tender the amount due is therefore inappropriate at this time, and the Harbour Defendants' Motion to Dismiss [34] is **GRANTED in part and DENIED in part** as to Count Seven. The Court notes, however, that this may change after further factual development. Defendants are therefore not barred from raising this argument at a later date.

27

I.      Count Eight - Declaratory Judgment

All the Signatory Plaintiffs, except Tabitha Hunter and Gerry White, bring claims for declaratory judgment against the Harbour Defendants and others.  For the reasons stated above in regards to Count Seven, the Harbour Defendants' Motion to Dismiss [34] is **GRANTED in part and DENIED in part** as to Count Eight.  The Court notes, however, that this may change after further factual development.  Defendants are therefore not barred from raising this argument at a later date.

J.      Count Nine - Unjust Enrichment

All plaintiffs bring claims for unjust enrichment against the Harbour Defendants and others.  The Harbour Defendants argue that Plaintiffs cannot state a claim for unjust enrichment since their relationship is governed by a contract.  Plaintiffs respond that their claim for unjust enrichment is brought in the alternative to the claims for breach of contract and breach of the implied duty of good faith and fair dealing.

"The theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated."  Smith Serv. Oil Co. v. Parker, 549 S.E.2d

28

485, 487 (Ga. Ct. App. 2001) (quoting <u>Cochran v. Ogletree</u>, 536 S.E.2d 194, 196 (Ga. Ct. App. 2000)).  The Court finds that Plaintiffs have stated a claim for unjust enrichment, which they have pled in the alternative to their claim for breach of contract.  Courts have held that a plaintiff may not plead an unjust enrichment claim in the alternative to a breach of contract claim when it is undisputed that a valid contract exists or where the court has found that a valid contract exists.  See <u>Tidikis v. Network for Med. Commc'ns & Research, LLC</u>, 619 S.E.2d 481, 485 (Ga. Ct. App. 2005) (noting that neither party challenged the validity of the contract); <u>Bogard v. Inter-State Assurance Co.</u>, 589 S.E.2d 317, 319 (Ga. Ct. App. 2003) (affirming trial court's grant of defendant's motion for judgment on the pleadings because plaintiff's unjust enrichment claim was precluded by the existence of a legally valid contract).  Here, however, Plaintiffs have disputed the validity of the contracts at issue by alleging that they are void as unconscionable and in violation of statutory law. The Harbour Defendants' Motion to Dismiss [34] is therefore **DENIED** as to Count Ten.

K.      Count Eleven - Breach of Contract and Breach of the Duty of

Good Faith and Fair Dealing

Plaintiffs Lisa Ellis-Blades, Anita Jordan, LaQuinta Hutchins, Laundra

Martin, Ola and Michael Johnson, and Al Butts and Veronica Pitts bring claims

for breach of contract and breach of the implied duty of good faith and fair

dealing against Harbour Portfolio VII, LP and another defendant.

Harbour Portfolio VII, LP argues that Plaintiffs have failed to state a

claim for breach of contract by failing to allege the contractual provision

breached.  Even if they have adequately alleged the breached contractual

provision, it argues, Plaintiffs have failed to show a material breach of said

provision.  Plaintiffs allege that Harbour Portfolio VII, LP "entered into a

contractual agreement with the above-listed Plaintiffs that Harbour would

collect a monthly escrow payment as necessary to pay required property taxes

and, in the case of Ms. Hutchins, Homeowners' Association fees."  (SAC, Dkt.

[8-1] ¶ 478.)  They further allege that Harbour Portfolio VII, LP breached this

contractual agreement by "collecting funds in excess of the amount needed to

pay required property taxes, failing to timely pay required property taxes,

causing fees and interest to accrue and then passing these charges onto the

AO 72A
(Rev.8/82)

consumer, failing to pay Homeowner's Association fees while collecting these fees from the consumer." (Id. ¶ 479.)  Plaintiffs have therefore sufficiently stated a claim for breach of contract against Harbour Portfolio VII, LP.

As to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, Harbour Portfolio VII, LP argues only that since the breach of contract claim fails, this claim must fail as well.  The Court has found that Plaintiffs have stated a claim for breach of contract.  They may likewise state a claim for breach of the implied covenant of good faith and fair dealing.  Therefore, the Harbour Defendants' Motion to Dismiss [34] is **DENIED** as to Count Eleven.

### L.    Count Twelve - Negligence

Plaintiffs Lisa Ellis-Blades, Anita Jordan, LaQuinta Hutchins, Laundra Martin, Ola and Michael Johnson, and Al Butts and Veronica Pitts bring claims for negligence against Harbour Portfolio VII, LP and another defendant. Defendant Harbour Portfolio VII, LP argues that this claim must fail for two reasons.  First, it argues that the Second Amended Complaint is unclear as to which defendant, it or NAA, breached duties to Plaintiffs and what those duties are.  Second, it argues that Plaintiffs fail to allege that it, instead of NAA,

31

breached any duty.  The Court finds that the Second Amended Complaint

makes clear that Plaintiffs allege that both Harbour Portfolio VII, LP and NAA

breached their duties to Plaintiffs which arise under the Real Estate Settlement

Procedures Act ("RESPA").  It also makes clear that Plaintiffs' claim for

negligence against Harbour Portfolio VII, LP is predicated on its liability for

the actions of its agent, NAA.  O.C.G.A. § 10-6-51.  The Harbour Defendants'

Motion to Dismiss [34] is therefore **DENIED** as to Count Twelve.

> ### M.     Count Thirteen - Malicious Eviction

Plaintiffs Gerry White and Tabitha and James Hunter bring claims for

malicious eviction against the Harbour Defendants.  The Harbour Defendants

argue that this claim is barred by res judicata because the Plaintiffs could have

made the arguments underlying this count in the prior dispossessory actions.

"Under the federal full faith and credit statute, 28 U.S.C. § 1738, federal courts

give preclusive effect to a state-court judgment whenever the courts of the state

from which the judgment emerged would do the same."  Richardson v. Miller,

101 F.3d 665, 668 (11th Cir. 1996).  The Court therefore applies Georgia law

to determine the effect of the judgments rendered by the courts of the State of

Georgia.

Under Georgia law, the "doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action." Karan, Inc. v. Auto-Owners Ins. Co., 629 S.E.2d 260, 262 (Ga. 2006) (quoting Waldroup v. Greene Cty. Hosp. Auth., 463 S.E.2d 5, 6 (Ga. 1995)). See also O.C.G.A. § 9-12-40; Akin v. PAFEC Ltd., 991 F.2d 1550, 1556 (11th Cir. 1993). "A party seeking to invoke res judicata on the basis of a prior judgment must establish three prerequisites: (1) identity of parties, (2) identity of the causes of action, (3) adjudication on the merits by a court of competent jurisdiction in which the parties had a full and fair opportunity to litigate the relevant issues." Akin, 991 F.2d at 1556.

Here, the first two elements are not contested by Plaintiffs. The parties involved here were the same as in the dispossessory actions. There is also an identity of the causes of action since the present claim for malicious eviction and the claim before the magistrate court are both predicated on the same contract. The only question before the Court is whether the magistrate court was a court of competent jurisdiction to hear Plaintiffs' malicious eviction claims.

33

Plaintiffs argue that because the Georgia Constitution vests exclusive jurisdiction respecting title to land in Superior Courts, the magistrate court was not a court of competent jurisdiction such that res judicata can now bar their claim.  They are correct that the magistrate court would not have had jurisdiction to hear this claim.  Their claim for malicious prosecution, however, was a compulsory counterclaim, and a defendant before a magistrate court waives any such claim not brought.  O.C.G.A. § 15-10-45(a) ("If any defendant has a counterclaim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim, which counterclaim does not require for its adjudication the presence of third parties over whom the court cannot obtain jurisdiction, such counterclaim shall be asserted by the defendant at or before the hearing on the plaintiff's claim or thereafter be barred.").  Both the dispossessory claims and the claims for malicious eviction arise out of the same transactions or occurrences.  Plaintiffs have therefore waived their right to bring this claim now.

That the magistrate court did not have jurisdiction to hear Plaintiffs' claim does not alter the analysis.  "The plain language of O.C.G.A. § 15-10-45(d) provides for the filing of compulsory counterclaims for amounts

34

exceeding the jurisdictional limits of the magistrate court and the transfer of the case to another court with jurisdiction over the case." Oh v. Bell, 470 S.E.2d 807, 809 (Ga. Ct. App. 1996). Because Plaintiffs failed to assert their claim for malicious eviction as a compulsory counterclaim in the dispossessory action, they are barred under O.C.G.A. § 15-10-45(a) and the doctrine of res judicata from asserting the claim here. Id.; see also Stringer v. Bugg, 563 S.E.2d 447, 449–50 (Ga. Ct. App. 2002) (rejecting the plaintiff's argument that because the magistrate court lacked jurisdiction for her claims, res judicata could not apply; "nothing would have prevented her from raising these claims in magistrate court and then moving the court transfer the action to state court."). The Harbour Defendants' Motion to Dismiss [34] is therefore **GRANTED** as to Count Thirteen.

### III.   NAA's Motion to Dismiss

A.   Statute of Limitations

Plaintiffs Lisa Ellis-Blades, Anita Jordan, LaQuinta Hutchins, Laundra Martin, Ola and Michael Johnson, and Al Butts and Veronica Pitts bring claims against NAA for violations of the Real Estate Settlement Procedures Act ("RESPA") (Count Ten) and against NAA and another defendant for

negligence predicated on the duties owed under RESPA.  The parties agree as to the relevant limitations periods for these claims.  There is a three year statute of limitations for actions brought under RESPA.  12 U.S.C. § 2614.  There is a four year statute of limitations for claims of negligent injury to, or deprivation of, property.  O.C.G.A. §§ 9-3-31, 9-3-32.  As such, Count Ten is limited to violations of RESPA that occurred on or after June 15, 2014.  Count Twelve is limited to instances of negligence that occurred on or after June 15, 2013. Defendant National Asset Advisors, LLC's Partial Motion to Dismiss [63] is therefore **GRANTED** as to Counts Ten and Twelve.

> **B.**     Count Seven - Equitable Mortgage and Count Eight - Declaratory Judgment

All the Signatory Plaintiffs, except Tabitha Hunter and Gerry White, bring claims for an equitable mortgage and declaratory judgment against NAA and others.  NAA argues that since it has no ownership interest in the properties and never entered into any CFDs with Plaintiffs, it has no ability to convert the CFDs into a mortgage.  Plaintiffs do not oppose dismissal on these grounds.  (Pls.' Resp. in Opp'n to NAA's Partial Mot. to Dismiss Pls.' SAC ("Pls.' Resp."), Dkt. [68], at 10.)  Defendant National Asset Advisors, LLC's

AO 72A
(Rev.8/82)

Partial Motion to Dismiss [63] is therefore **GRANTED** as to Counts Seven and Eight.

> ### C.   Count Nine - Unjust Enrichment

All Plaintiffs bring claims for unjust enrichment against NAA and others.  To recover for unjust enrichment, Plaintiffs must show "that (1) a benefit has been conferred, (2) compensation has not been given for receipt of the benefit, and (3) the failure to so compensate would be unjust."  Clark v. Aaron's Inc., 914 F. Supp. 2d 1301, 1309 (N.D. Ga. 2012).

As an initial matter, Plaintiffs and NAA agree that Count Nine, as it applies to NAA, is limited to seeking repayment of amounts spent on property taxes.  (Pls.' Resp., Dkt. [68], at 8; Def. NAA's Reply to Pls.' Resp. in Opp'n to Partial Mot. to Dismiss, Dkt. [72], at 2.)  Count Nine is therefore dismissed against NAA to the extent it seeks repayment of amounts spent on home repairs and improvements or homeowner's insurance.

NAA argues that Plaintiffs have failed to show that they have been conferred a benefit.  Plaintiffs have alleged that NAA has retained excess funds paid to it, but these funds were held in Plaintiffs' escrow accounts.  NAA could not, it argues, benefit from money kept in such a fashion.  The Court finds,

however, that Plaintiffs have alleged facts sufficient to state a claim for unjust

enrichment at this stage of litigation.  A reasonable inference can be drawn that

NAA retained the funds for its own benefit.  This satisfies Plaintiffs' pleading

requirements.  Defendant National Asset Advisors, LLC's Partial Motion to

Dismiss [63] is therefore **GRANTED in part and DENIED in part** as to

Count Nine.

> D.   Count Eleven - Breach of Contract and Breach of the Duty of
>       Good Faith and Fair Dealing

Plaintiffs Lisa Ellis-Blades, Anita Jordan, LaQuinta Hutchins, Laundra

Martin, Ola and Michael Johnson, and Al Butts and Veronica Pitts bring claims

for breach of contract and breach of the duty of good faith and fair dealing

against NAA and another defendant.  NAA argues that Plaintiffs have failed to

allege that it was a party to any contract with Plaintiffs.  The Court agrees.

Plaintiffs allege that "Harbour Portfolio [VII, LP] entered into a

contractual agreement with the above-listed Plaintiffs that Harbour would

collect a monthly escrow payment as necessary to pay required property taxes

and, in the case of Ms. Hutchins, Homeowners' Association fees."  (SAC, Dkt.

[8-1] ¶ 478.)  As to NAA, they allege that "Harbour Portfolio [VII, LP], by and

through its servicing agent NAA, has mishandled the servicing of the escrow accounts" and therefore breached the contract.  (Id. ¶ 479.)  While Plaintiffs argue that they have pled facts from which a reasonable inference may be drawn that NAA entered into an escrow agreement on its own behalf, the Court finds that the facts as alleged in the Second Amended Complaint do not support such an inference.  Defendant National Asset Advisors, LLC's Partial Motion to Dismiss [63] is therefore **GRANTED** as to Count Eleven.

## Conclusion

In accordance with the foregoing, the Harbour Defendants' Motion to Dismiss [34] is **GRANTED in part and DENIED in part**.  More specifically, the motion is **DENIED** as to Count 1; **DENIED** as to Count 2; **DENIED** as to Count 3; **GRANTED** as to the appraisal and escrow claims but **DENIED** as to the ability to repay claim in Count 4; **DENIED** as to the FBPA claims, **DENIED** as to Ola Johnson's and Al Butts's UDPTEA claims, and **GRANTED** as to Veronica Pitt's UDPTEA claim in Count 5; **DENIED** as to Count 6; **GRANTED** as to DeMarkus Horne, Ola and Michael Johnson, and Rita Henigan and Rohan Powell and **DENIED** as to all other Plaintiffs in Count 7; **GRANTED** as to DeMarkus Horne, Ola and Michael Johnson, and

AO 72A
(Rev.8/82)

Rita Henigan and Rohan Powell and **DENIED** as to all other Plaintiffs in

Count 8; **DENIED** as to Count 10; **DENIED** as to Count 11; **DENIED** as to

Count 12; and **GRANTED** as to Count 13.  Defendant National Asset

Advisors, LLC's Partial Motion to Dismiss [63] is **GRANTED in part and**

**DENIED in part**.  More specifically, the motion is **GRANTED** as to Count 7;

**GRANTED** as to Count 8; **GRANTED** as to the claims relating to home

repairs, improvements, and homeowner's insurance and **DENIED** as to the

claims relating to property taxes in Count 9; **GRANTED** as to the partial

motion to dismiss Counts 10, limiting these claims to the violations that

occurred within the relevant limitations period; **GRANTED** as to Count 11;

and **GRANTED** as to the partial motion to dismiss Counts 12, limiting these

claims to the violations that occurred within the relevant limitations period.

Defendant National Asset Advisors, Inc.'s Motion to Withdraw Answer to

Cross Claim of Defendant JCT Capital [74] is **GRANTED**.

      **SO ORDERED**, this 20th day of March, 2018.

**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)